# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER HEATON, | : | CIVIL ACTION NO. 3:16-cv-0573 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| THERESA DELBALSO, *et al.*, DR. GUSTITUS, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Plaintiff Christopher Heaton ("Heaton" or "plaintiff"), at all times relevant an inmate incarcerated at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), Frackville, Pennsylvania, commenced this civil rights action on April 6, 2016. (Doc. 1). Heaton names the following defendants: Theresa Delbalso ("Delbalso"), Superintendent; John Steinhart ("Steinhart"), Health Care Administrator; and Wexford Health Sources, Inc. ("Wexford"). Presently pending are defendants' motions (Docs. 22, 24) to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motions will be granted.

## I.     **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be

drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## II. Allegations of the Complaint

Heaton alleges that on March 31, 2014, while working in the kitchen at SCI-Mahanoy, he slipped and injured his left shoulder. (Doc. 1, p. 3). The pain stayed with him and he "found out about 6 months later that [he] tore [his] rotator cuff in [his] left shoulder." (Id.) He alleges that he has been "given the run around" for almost two years. (Id.) Physical therapy was unsuccessful. (Id.) His therapist allegedly informed him that surgery was his only viable option. (Id.)

He alleges that despite informing the medical department that he continually experiences pain when he lifts his shoulder and that his ability to exercises is limited by the injury, he has "had no remedy." (Id.)

He seeks proper diagnosis and treatment by a board certified surgeon and orthopedist and physical therapy. (Id. at 4). He also seeks compensatory and punitive damages. (Id.)

## III. Discussion

Heaton brings this civil rights action pursuant to Section 1983 of Title 42 of the United States Code. Section 1983 offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

3

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

### A. Defendants Delbalso and Steinhart

Defendants Delbalso and Steinhart move to dismiss the complaint based on Heaton's failure to allege that they were personally involved in the alleged denial or delay of his medical care. Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." Id. In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

Delbalso and Steinhart argue that "other than being named as Defendants, neither

Delbalso nor Steinhart are mentioned in the complaint. Thus, Heaton fails to specifically connect these individuals to any of the allegations made." (Doc. 23, p. 4). Plaintiff suggests in his response that these defendants are liable based upon their roles as supervisors and the knowledge they garnered from reviewing request and sick call slips and prison grievances. Specifically, he states that he filed "several request slips, sick call slips to SCI Mahanoy's medical department (See Exhibit A). This department was an [sic] is supervised by defendant John Steinhart the Health Administrator, and Theresa DelBalso the Superintendent." (Doc. 32, p. 3).

As noted *supra*, liability cannot be solely predicated on an individual's supervisory role. Heaton's complaint is devoid of allegations that suggest that either Delbalso or Steinhart had personal involvement in the denial or delay of his medical care.

Heaton fares no better in attempting to impose liability based on request slips, sick call slips or grievances. Allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania

Dept. of Corrections, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

Moreover, the Third Circuit, has held that, '[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison. . . .  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. . . .  [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable under the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (discussing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)).  It is clear that Heaton was under the care of medical providers and physicians during the time period at issue.

**B.     Wexford**

1.     Failure to Exhaust

Wexford contends that Heaton's complaint is subject to dismissal based on his failure to exhaust administrative remedies.  (Doc. 25, pp. 2-5).  The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996), contains an administrative exhaustion requirement for prisoners seeking relief for prison conditions. The statute provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "Before filing a federal lawsuit . . . a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative remedy procedures. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000). Section 1997e(a) 'specifically mandates' that inmate-plaintiffs exhaust their available administrative remedies. Nyhuis [v. Reno, 204 F.3d 65] at 73 (internal quotations omitted) [(3d Cir. 2000)]. Therefore, 'it is beyond the power of this court . . . to excuse compliance with the exhaustion requirement. Id. Accordingly, the Third Circuit has articulated '[o]ur bright line rule is that inmate-plaintiffs must exhaust all available administrative remedies.' Nyhuis, 204 F.3d at 75." Ahmed v. Sromovski, 103 F. Supp. 2d 838 842-843 (E.D.Pa. 2000).

The Pennsylvania Department of Corrections (DOC) "Inmate Grievance System" policy, DC-ADM 804, permits an inmate to seek initial review of a grievance by a staff member designated as a grievance officer. (Doc. 25, p. 4). If dissatisfied with the grievance officer's response, the inmate may pursue an appeal to the superintendent of the facility. (Id.) If still dissatisfied, the inmate has the option to submit a final appeal to the Secretary's Office of Inmate Grievances and Appeals. (Id.)

Wexford contends that Heaton failed to exhaust available administrative remedies in that he did not submit any grievances to the Secretary's Office of Inmate Grievances and Appeals for final review. (Doc. 25, p. 3). In support of this argument, Wexford

relies on a letter authored by Dorina Varner, Chief Grievance Officer with the Pennsylvania Department of Corrections wherein she states "I have reviewed our records and found that Mr. Heaton has not appealed any grievances to final review; therefore, this office has no records to provide." (Id. at 3; Doc. 25-1, p. 1).

In opposition, Heaton submits a copy of grievance 626137. (Doc. 32, p. 11). Therein, Heaton states "I injured my shoulder over two years ago and have been more than patient trying to get it fixed. I have been waiting over one year just to get a video conference with a physician. I'm seeking to have my injury repaired in a timely manner." (Id.) The grievance was denied and Heaton appealed the grievance to final review, as evidenced by the notice of a grievance referral from Dorina Varner, dated July 18, 2016, acknowledging receipt of his appeal to final review of grievance 626137. (Doc. 32, p. 8).

Accordingly, Wexford's motion to dismiss for failure to exhaust will be denied.

2. Statute of Limitations

Wexford also seeks to dismiss the complaint as untimely. Wexford argues that although Heaton alleges that he sustained the injury to his shoulder on March 31, 2016, he did not initiate this action until April 6, 2016 and, as such, his complaint was filed beyond the applicable statute of limitations.

A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Kach v. Hose, 589 F.3d 626, 639 (3d Cir. 2009). Heaton's claim arose in Pennsylvania; thus, the applicable statute of

limitations is Pennsylvania's two year statute of limitations for personal injury actions. 42 PA. CONS. STAT. ANN. § 5524(2).  The statute of limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.  See Garvin v. City of Phila., 354 F.3d 215 (3d Cir. 2003); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir.1991).  It is clear from the complaint that Heaton's claim accrued on March 31, 2016.  This action was commenced on April 6, 2016.

However, under the mailbox standards announced in Houston v. Lack, 487 U.S. 266 (1988), a prisoner's action is deemed filed at the time it is given to prison officials for mailing to the Court.  Heaton's complaint is signed and dated March 28, 2016, and deemed filed as of that date. The complaint is therefore timely and Wexford's motion is not entitled to relief in this regard.

### 3. Monell Claim

Wexford also moves to dismiss the complaint on the grounds that it is not vicariously liable for the conduct of its employees.  A private corporation under contract to provide prison health services, such as Wexford, may be liable under Section 1983 for actions taken under color of state law.  Monell v. Dep't of Soc. Services, 436 U.S. 658, 690-92 (1978); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003).  However, under Section 1983, like a municipality, a private corporation cannot be held responsible for the acts of its employees under a theory of *respondeat superior*. Monell, 436 U.S. at 691.  Instead, to establish liability, a plaintiff must demonstrate that he suffered a constitutional violation as a result of the private corporation's policy or

custom. See B.S. v. Somerset Cnty., 704 F.3d 250, 275 (3d Cir. 2013) (explaining that it is the plaintiff's burden to show "that a policymaker is responsible either for the policy or, through acquiescence, for the custom").

Significantly, not all actions rise to the level of a custom or policy. A policy is made when a decision-maker who possesses final authority to establish policy with respect to the action issues a final proclamation, policy or edict. Kneipp v. Tedder, 95 F.3d 1199, 212 (3d Cir. 1996). Custom is an act that, although not specifically endorsed or authorized by law, is so well-settled and permanent as to have the force of law. See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

Accepting as true the factual allegations in the complaint, and drawing all reasonable inferences in a light most favorable to Plaintiff, it is clear that he fails to allege that Wexford had a custom or policy that caused deliberate indifference to his medical needs. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir.2009) (noting that a Monell plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was"). His sole reason for naming Wexford is that it is the "3rd party medical care provider for SCI-Mahanoy." (Doc. 32, p. 3). The allegations of the complaint relate solely to the manner in which medical treatment was administered to plaintiff; this is insufficient to establish Monell liability. See Okla. City v. Tuttle, 471 U.S. 808, 823–24 (1985) (finding that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that

it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); see also Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011); see also Thomas v. Cianfrani, No. 01–3096, 2009 WL 1704471, at *3-4 (E.D. Pa. June 18, 2009) (dismissing Monell claims against the city because the plaintiff's allegations were "limited to the events directly relating to himself," which was not sufficient). Accordingly, the complaint against Wexford will be dismissed.

### IV.    Leave to Amend

The Court recognizes that the sufficiency of this *pro se* pleading must be construed liberally in favor of Heaton, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). Consequently, a complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). An amendment is considered futile "if the [it] will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss." Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988).

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and

11

(2) that those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." Rouse, 182 F.3d at 197.  Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).  Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).  Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.  See Bowring at 48 (4th Cir.1977); Massey v. Hutto, 545 F.2d 45, 46 (8th Cir.1976) (per curiam).

According to two separate grievance responses Heaton submitted in opposition to Wexford's exhaustion argument, it is clear that Heaton has received significant medical treatment and that he simply disagrees with the medical approach to his injury.  The first response is dated May 1, 2015, and is authored by a registered nurse.  She responds as

follows:

> I have reviewed your chart in regard to grievance #564134. You were initially seen for the left shoulder pain on 4/25/15, which according to the practitioners [sic] note, was 4 weeks after injury. . . . On your first visit to sick call you were ordered medication and instructed on range of motion exercises. You did not return to sick call until 5/14/15, still complaining of pain. Again, medication was ordered and you were given light stretching exercises. At this visit, the practitioner also ordered a Physical Therapy consult. You were seen by PT, on-site, on 6/6/14. The therapist gave you exercises to do and requested a 4-6 week follow-up. You were again seen on 7/25/14. The therapist saw no improvement and recommended an orthopedic consult. The consult was ordered and you were seen at Geisinger Medical Center orthopod. His finding were [sic] that you MAY have a very small tear in your shoulder. A MRI was ordered which showed an inflammation of the capsule of the shoulder with very minimal minor changes of the rotator cuff. There was no evidence of a tear, so I have no idea where you obtained this information. You were seen at SUN Orthopedics on 10/17/[14] [sic] and after the doctor reviewed your MRI, he did a steroid injection to your left shoulder. He documented that you could do regular activities. You were advised on self exercise fo the affected area. You have been followed on a regular basis by physical therapy and on doctor line. You are again ordered an orthopedic consult on the recommendation of the physical therapist. But as in the private sector, it may take some time before an appointment can be obtained. So you are not aware of the plan. It is obvious to me that your care has been ongoing and prudent. If you have additional problems or questions before you see the off-site orthopedic doctor, you are afforded sick call Monday through Friday. Please utilize the sick call procedure.

(Doc. 32, p. 16).

According to the second grievance response authored by a registered nurse and dated June 7, 2016, Heaton was again seen by an orthopedic doctor on May 27, 2016. "As per your latest ortho appointment, the recommendation was for aggressive physical therapy before any further intervention including surgery would be considered and you were given exercises to complete." (Id. at 10).

Affording Heaton the opportunity to amend would clearly be futile as it is clear

13

that he received a significant amount of medical treatment and that he is simply dissatisfied with the course of treatment offered.

## V.     Conclusion

For the reasons set forth above, the motions (Docs 22, 24) to dismiss will be granted and the complaint will be dismissed in its entirety.

                **BY THE COURT:**

                **s/James M. Munley**
                **JUDGE JAMES M. MUNLEY**
                **United States District Court**

Dated:     February 28, 2017